UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>RAFAEL LOPEZ-ONTIVEROS<br><br>          Defendant. | Case No.: 15-cr-575-GPC-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 413.]** |

  Defendant Rafael Lopez-Ontiveros has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c).  ECF No. 413.  The Government opposes.  ECF No. 419 ("Opp.").  For the reasons that follow, Lopez-Ontiveros's motion is DENIED.

  **I.**  **BACKGROUND**

  Lopez-Ontiveros was convicted by guilty plea of one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1) and 846.  ECF Nos. 291, 337.  Lopez-Ontiveros was sentenced to a term of imprisonment of 168 months, followed by 5 years of supervised release.  ECF No. 337.  He is presently serving his sentence at the Federal Correctional Institution Lompoc ("FCI Lompoc").  ECF No. 413 at 6.  As of today's date, Lopez-Ontiveros has served about 68 months, or over 40 percent of his sentence.

1

Lopez-Ontiveros is 33 years old and has been diagnosed with hypertension, hyperlipidemia, and prediabetes since being incarcerated at FCI Lompoc.  ECF No. 413 at 13–14; ECF No. 417, Ex. L; ECF No. 336 ("Presentence Investigation Report" or "PSR") at 16.  In April 2020, Lopez-Ontiveros reports that he developed fever, diarrhea and body aches, lost 20 pounds, could not breathe while sleeping, woke up in sweats, and suffered from severe head and throat pain.  ECF No. 413-3, Ex. C ¶ 8.  On May 6, 2020, the day Lopez-Ontiveros reports FCI Lompoc began testing inmates en masse for COVID-19, Lopez-Ontiveros tested positive for COVID-19.  *Id.* ¶ 10; ECF No. 417, Ex. C-1.  Although FCI Lompoc lists Lopez-Ontiveros as having recovered from COVID-19, Lopez-Ontiveros contends that he has not fully recovered, continues to suffer from severe headaches and asthma attacks, and has not been seen by medical staff after requesting medical help.  ECF No. 413 at 15; ECF No. 413-3, Ex. C ¶ 24; ECF No. 417, Ex. C-1.  Lopez-Ontiveros also reports suffering from psychological trauma due to his experience with COVID-19 and witnessing the death of fellow inmate following complications from COVID-19.  ECF No. 413-3, Ex. C ¶¶ 16, 26.

## II.   DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

2

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*.  As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

3

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.   Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  On May 30, 2020, Lopez-Ontiveros filed a request with the Warden to bring a motion for compassionate release on his behalf.  ECF No. 413 at 10; ECF No. 413-1, Ex. A.  He did not receive a response within 30 days.  ECF No. 413 at 10.  The Government does not argue that Lopez-Ontiveros failed to exhaust administrative remedies. Opp. at 9.  Accordingly, the Court finds that Lopez-Ontiveros has met the exhaustion requirement under Section 3682(c)(1)(A).

### B.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction,

4

including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Lopez-Ontiveros argues that his hypertension, hyperlipidemia, prediabetes, and severe anxiety put him at high risk of serious illness or death from COVID-19. Lopez-Ontiveros contends that although he has already contracted COVID-19, there is no scientific evidence that infection with COVID-19 confers lasting immunity from subsequent reinfection, meaning Lopez-Ontiveros may be at risk of reinfection while he remains at FCI Lompoc. ECF No. 413 at 20–25. The Government takes conflicting positions in its response in opposition regarding Lopez-Ontiveros's medical conditions, arguing both that Lopez-Ontiveros's hypertension is not a risk factor identified by the Centers for Disease Control and Prevention ("CDC") and that "Defendant presents a risk factor identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19." Opp. at 9–11, 12.

The Court notes that hyperlipidemia, prediabetes, and anxiety are not conditions listed by the CDC as potentially increasing the risk of serious illness from COVID-19, and Lopez-Ontiveros does not support his assertion that these conditions increase his risk. *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html ("CDC, *People at Higher Risk*"). Thus, the two central questions are (1) whether hypertension qualifies as a risk factor for severe COVID-19 and (2) whether a person with risk factors who already tested positive for COVID-19 has a likelihood of reinfection such that possible reinfection could form a basis for release. District courts have gone both ways on both of these issues. *See, e.g.*, *United States v. Hilow*, No. 15-

5

CR-170-JD, 2020 WL 2851086, at *4 (D.N.H. June 2, 2020) ("[E]ven controlled hypertension in conjunction with COVID-19 is a health risk."); *United States v. Wilson*, No. 2:18-CR-00132-RAJ, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (finding hypertension alone insufficient to justify reduction of sentence); *United States v. Sholler*, 445 F. Supp. 3d 265, 271–72 (N.D. Cal. 2020) (granting compassionate release to defendant who had already been infected with COVID-19); *United States v. McCollough*, No. CR1500336001PHXDLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (rejecting argument for compassionate release based on possibility or reinfection). The CDC lists pulmonary hypertension as a condition that increases risk of severe illness from COVID-19, but notes that other forms of hypertension might do the same. *See* CDC, *People at Higher Risk.* The Court also recognizes that the science on whether COVID-19 antibodies confer immunity, and however long such immunity lasts, is not yet clear. Given that the CDC lists hypertension as a potential risk factor for severe illness and that immunity is uncertain, the Court finds Lopez-Ontiveros has demonstrated he is at some risk of reinfection with a serious case of COVID-19.

However, the factors outlined in Sections 3553 and 3582 also require consideration of a potential sentence reduction's impact on public safety, the creation of unwarranted sentencing disparities, and the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law. 18 U.S.C. §§ 3553(a)(2), (6), 3582(c)(1)(A)(ii). Lopez-Ontiveros argues that because his offense was not violent and that he has made notable educational and personal progress while in prison, he would not be a danger to the public if released to his family. ECF No. 413 at 26. Lopez-Ontiveros further argues that reducing his sentence to time served or modifying his sentence to allow for home confinement would still meaningfully address the need for punishment for his offense. *Id.* at 28–29. The Government argues that because Lopez-Ontiveros was the leader of a drug trafficking organization and a prolific methamphetamine distributor, has prior convictions for felony drug offenses, and already received a large variance

6

during sentencing, his sentence should not be reduced. Opp. At 13. Although the Court recognizes Lopez-Ontiveros has made strides in furthering his education while serving his sentence, the Court agrees with the Government that the severity of Lopez-Ontiveros's offense weighs against granting his motion. This conduct, which Lopez-Ontiveros engaged in shortly after being released on parole following a sentence for methamphetamine distribution offenses, endangered the public by placing over 45 kilograms of methamphetamine into the community. PSR at 6, 11. Further, Lopez-Ontiveros has only served approximately 68 months of a 168-month sentence. Reduction of his sentence for a serious drug distribution offense in which he took a leadership role to only 68 months would create an unwarranted sentencing disparity with others convicted of the same offense and would not reflect the seriousness of the offense. Accordingly, the Court finds that Lopez-Ontiveros has not shown that he would not present a danger to the public upon release or that his release would be consistent with the sentencing factors set forth in Section 3553, and thus has not demonstrated he is eligible for a reduction or modification of his sentence.

### III. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 6, 2020

Hon. Gonzalo P. Curiel
United States District Judge