1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12   UNITED STATES OF AMERICA,              Case No.:  15-CR-00575-GPC-1

13                         Plaintiff,       **ORDER GRANTING MOTION FOR**
                                            **COMPASSIONATE RELEASE**
14            v.

15   RAFAEL LOPEZ-ONTIVEROS

16                         Defendant.       **[ECF No. 481]**

17

18        On August 2, 2024, Defendant Rafael Lopez-Ontiveros ("Defendant" or "Lopez")

19   filed a motion seeking compassionate release under 18 U.S.C. § 3582(c).  ECF No. 481.

20   The Government opposes.  ECF 485.  Lopez filed a reply.  ECF No. 486. For the reasons

21   set forth below, the Court GRANTS Lopez's motion for compassionate release and

22   reduces Lopez's sentence to time served.

23                                  **BACKGROUND**

24        On June 13, 2017, Lopez pled guilty to Conspiracy to Distribute

25   Methamphetamine in violation of 21 U.S.C. § 841(a)(2).  ECF No. 291.  On March 26,

26   2018, this Court sentenced Lopez to 168 months, followed by five years of supervised

27   release.  ECF No. 337.  Lopez is currently serving his term at RRM Long Beach and has

28

1    a projected release date of January 23, 2026.[1]  Lopez has been in custody since his arrest

2    on February 4, 2015.  ECF No. 303 at 1.[2]

3         Lopez is currently 38 years old.  ECF 481 at 3.  Lopez has a criminal history dating

4    back to 2007, when he was convicted of Use of a Minor to Violate Controlled Substance

5    Law, Conspiracy to Commit a Felony, Solicitation to Commit Murder, and Possession of

6    Methamphetamine for Sale.  ECF 303 at 11-13; ECF No. 336 at 11-13.  Lopez has been

7    diagnosed with anxiety, insomnia, hypertension, depression, prediabetes, and obesity.

8    ECF No. 481 at 28.  He takes medication for some of these conditions, but has not

9    received medication for his anxiety, depression, and insomnia.  *Id*. at 29.  Additionally,

10   Lopez was housed at FCI Lompoc during the worst of the COVID-19 pandemic, where

11   several inmates contracted COVID-19 and died.  *Id*. at 33-37.

12        At sentencing, Defense counsel recommended the statutory minimum of 120

13   months.  ECF No. 333 at 7; *see* 21 U.S.C. 841(b)(1)(vii).  The Government recommended

14   168 months in custody, followed by three years of supervised release.  ECF No. 334.

15   Probation recommended 300 months in custody, followed by five years of supervised

16   release.  ECF No. 336 at 23.  The Court accepted the Government's recommendation and

17   imposed a sentence of 168 months, followed by five years of supervised release.  ECF

18   No. 337.

19        On August 2, 2024, Lopez filed a renewed motion for compassionate release with

20   the assistance of counsel.  ECF 481.  He is requesting a reduction in sentence to time

21   served—which, at this point, is just over 10 years.  *Id*. at 44; *see* ECF No. 12.  Lopez

22   seeks this reduction in sentence for three reasons: (1) changes in the law have created a

23   disparity between his sentence and those of similarly situated defendants; (2) his medical

24   conditions and conditions of confinement during the COVID-19 pandemic; and (3) his

25   rehabilitation efforts during his time in custody.  ECF No. 481 at 19.

26

27

28
[1] Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (last visited Jan, 17, 2025).
[2] Page numbers reflect CM/ECF pagination.

15-CR-00575-GPC-1

1

**LEGAL STANDARD**

2      Generally, a federal court "may not modify a term of imprisonment once it has

3 been imposed," *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18

4 U.S.C. § 3582(c)), except "in limited circumstances set out by federal statute," *United*

5 *States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022).  Lopez seeks to modify his sentence

6 under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A) as amended by

7 the First Step Act ("FSA").  In relevant part, § 3582(c)(1)(A) permits a court to modify a

8 term of imprisonment:

9      the court, upon motion of the Director of the Bureau of Prisons, or upon
       motion of the defendant after defendant has fully exhausted all
10     administrative rights to appeal a failure of the Bureau of Prisons to bring a
       motion on the defendant's behalf . . . may reduce the term of imprisonment
11     (and may impose a term of probation or supervised release with or without
       conditions that does not exceed the unserved portion of the original term of
12     imprisonment), after considering the factors set forth in § 3553(a) to the
       extent that they are applicable, if it finds that—
13

14          (i) extraordinary and compelling reasons warrant such a reduction;
             …
15     and that such a reduction is consistent with applicable policy
       statements issued by the Sentencing Commission[.]
16

17

18     Previously, the Ninth Circuit held that policy statement U.S.S.G. § 1B1.13

19 governed only § 3582(c)(1)(A) motions brought by the Director of the Bureau of Prisons

20 ("BOP").  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam)

21 (finding the "current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement'

22 for 18 U.S.C. § 3582(c)(1)(A) motions filed by defendant").  However, amendments to

23 § 1B1.13, effective November 1, 2023, reflect that the policy statement is now applicable

24 to motions filed by defendant and the BOP.  *United States v. Garcia Nava*, 2024 WL

25 221439, at *2 (S.D. Cal. Jan. 19, 2024); *see* U.S.S.G. § 1B1.13(a) ("Upon motion of the

26 Director of Bureau of Prisons *or the defendant*…") (emphasis added).  Therefore, policy

27 statement § 1B1.13 is binding on this Court's consideration of Lopez's motion for

28

15-CR-00575-GPC-1

1  compassionate release.

2       Under § 1B1.13, as amended, extraordinary and compelling circumstances include:

3  (1) medical conditions of the defendant, whether terminal or chronic, that substantially

4  diminish the defendant's ability to provide self-care within a correctional facility; (2) age

5  when the defendant is at least 65 years old; (3) family circumstances rendering defendant

6  the only available caretaker for a family member; (4) defendant, while in custody, was a

7  victim of abuse by a BOP employee; (5) other reasons not specifically enumerated that,

8  when considered by themselves or together, are of a similar gravity as those described in

9  (1)-(4); and (6) a change in law that has created a gross disparity between the sentence

10 being served and the sentence likely to be imposed at the time the motion is filed, but

11 only where the defendant has served at least 10 years of an unusually long sentence.

12      Lastly, § 1B1.13(a)(2) instructs that prior to granting a motion for compassionate

13 release, a court must determine that "the defendant is not a danger to the safety of any

14 other person or to the community, as provided in 18 U.S.C. § 3142(g)."

15 **DISCUSSION**

16      The Court must determine whether Lopez has established "extraordinary and

17 compelling" reasons consistent with the policy statement to justify a reduction in

18 sentence.[3]  If he has, the Court must decide whether the requested reduction in sentence

19 would be consistent with the factors set forth in § 3553(a) and whether Lopez is a danger

20 to others or the community.

21 **I.   Extraordinary and Compelling Reasons**

22      Lopez contends that three extraordinary and compelling reasons warrant granting

23 compassionate release: (1) changes in the law which have created a disparity between his

24 sentence and those of similarly situated defendants, specifically Ivan Ramon Tizoc;[4] (2)

25 his medical conditions, including prediabetes, obesity, dermatitis, anxiety, insomnia,

26 _____

27 [3] It is undisputed that Lopez has met the administrative exhaustion requirement of 18 U.S.C. §
3582(a)(1)(C).  *See* ECF No. 481-1 at 33-41 (Mr. Lopez's compassionate release requests and appeals).

28 [4] *See United States v. Tizoc*, No. 15-CR-1299-GPC-1, ECF Nos. 327-329.

15-CR-00575-GPC-1

1    hypertension, and high cholesterol; (3) the conditions of confinement he endured during

2    the COVID-19 pandemic; and (4) his rehabilitation during incarceration.  ECF No. 481 at

3    19-37.  Lopez also contends that even if none of these circumstances constitute

4    "extraordinary and compelling reasons" on their own, they constitute "extraordinary and

5    compelling reasons" in the aggregate.  *Id.* at 19 (citing U.S.S.G. § 1B1.13(b)(5)).  The

6    Court will first consider each of these on their own, and then determine whether they

7    amount to extraordinary and compelling reasons in the aggregate.

8    ### A. Sentence Length Disparity (Catch-All Provision)

9    Lopez first brings a sentence length disparity argument under the catch-all

10    provision.  Under § 1B1.13(b)(5) (known as the "catch-all provision"), a court may find

11    extraordinary and compelling reasons where "[t]he defendant presents any other

12    circumstances or combination of circumstances that, when considered by themselves or

13    together with any of the reasons described in paragraphs (1) through (4), are similar in

14    gravity to those described in paragraphs (1) through (4)."

15    Lopez argues that the "unusual and disparate length of his sentence" compared to

16    similarly situated defendants in the District constitutes extraordinary and compelling

17    reasons under the policy statement's catch-all provision.[5]  ECF No. 481 at 19.  Lopez's

18    primary argument is that the Court's reduction of a similar defendant's sentence in

19    *United States v. Tizoc*, No. 15-CR-1299-GPC-1, ECF. Nos. 327-329, as well as in other

20    cases, warrants a similar reduction of his own sentence.  ECF No. 481 at 4-6, 8-10, 23-

21    27; ECF No. 486 at 3-4, 8-10.  Lopez attributes this disparity to the FSA, the Ninth

22

23

24    [5] It was initially unclear where Defendant's arguments regarding his unusual and disparate sentence
length found their home in the policy statement.  *See, e.g.,* ECF No. 481 at 20-28 (failing to reference
25    the policy statement's enumerated grounds constituting "extraordinary and compelling reasons").  The
Government's opposition attacked the arguments on the grounds that the sentence was not an "unusually
26    long sentence" under § 1B1.13(b)(6) because Lopez had not completed 10 years of his sentence, ECF
No. 485 at 4, and on the grounds that Lopez was not eligible for a sentence reduction under 18 U.S.C. §
27    3582(c)(2), *id.* at 4-6.  Defendant then clarified in his reply brief that he "raised the arguments . . . under
the compassionate release statute's 'catchall' provision, U.S.S.G. § 1B1.13(b)(5) (Other Reasons)," and
28    not under § 1B1.13(b)(6) or 18 U.S.C. § 3582(c)(2).  ECF No. 486 at 8.

15-CR-00575-GPC-1

1  Circuit's decision in *Lopez*, 998 F.3d at 431, and recent amendments to the Sentencing

2  Guidelines.  *Id.*

3      The Government's opposition did not focus on the catch-all provision because of

4  the confusion surrounding the grounds for Lopez's arguments.  *See supra*, note 5.

5  Regardless of the merits of the Government's arguments, Lopez specifies in his reply

6  brief that he seeks relief under the catch-all provision.  ECF No. 486 at 8.  Accordingly,

7  the Court must determine whether the circumstances "are similar in gravity to" the other

8  enumerated "extraordinary and compelling reasons" in the policy statement.

9              **i.  *Tizoc* and Other Similarly Situated Defendants**

10      Lopez first argues that there is an unwarranted disparity between Lopez's sentence

11  and those of similarly situated defendants.  ECF No. 481 at 4-6, 8-10, 23-27.  Lopez's

12  primary argument is that the Court granted a joint motion to reduce Ivan Ramon Tizoc's

13  sentence based on similar reasons to those Lopez presents here.  *Id.* at 8-10 (referencing

14  *Tizoc*, No. 15-CR-1299-GPC-1, ECF No. 328.

15      Tizoc was originally sentenced to 200 months in federal custody for conspiracy to

16  distribute methamphetamine and possession with intent to distribute heroin.  *Tizoc*, No.

17  15-CR-1299-GPC-1, ECF No. 245.  On August 16, 2022, the Government and Tizoc

18  jointly moved the Court to reduce Tizoc's sentence to 144 months under 18 U.S.C. §

19  3582(c)(1)(A).  The joint motion described Tizoc's medical conditions (obesity and

20  diabetes), the disparity between his sentence and those of similarly situated individuals,

21  his safety valve eligibility under the FSA, his risk of contracting COVID-19, the fact that

22  he had completed roughly 43 percent of his custodial sentence, his rehabilitation, his

23  strong family ties and support, and his encouraging release plan.  *Id.* at ECF No. 324.

24  The Court granted the joint motion based on this combination of factors.  *Id.* at ECF No.

25  328.  As a result, Tizoc's sentence was reduced to 144 months, which is shorter than the

26  168 months the Court sentenced Lopez to.  *Id.*

27      Lopez correctly points out many similarities between him and Tizoc.  At the most

28  basic level, both Lopez and Tizoc were convicted of conspiracy to distribute

15-CR-00575-GPC-1

1    methamphetamine.  At sentencing, the Assistant United States Attorney-- who prosecuted

2    both cases—described Lopez and Tizoc as running "related conspirac[ies]" and discussed

3    how the two would sell to each other, but ultimately stated that Tizoc's organization "was

4    far more … extensive than" Lopez's organization.  ECF No. 481-1 at 23-24.  The Court

5    also likened Lopez to Tizoc at Lopez's sentencing, stating that it viewed both as "the lead

6    defendant in these huge methamphetamine cases," which "warrants the greatest sentence

7    of all the defendants."  *Id.* at 30.  These considerations ultimately factored in to Lopez's

8    168-month sentence.  *See generally id.* at 5-34.  However, despite these similarities,

9    Lopez is set to serve 24 more months in federal custody than Tizoc—a disparity that can

10   be attributed to Tizoc's sentence reduction.

11        What is more pertinent here are the similar grounds presented for reducing Lopez

12   and Tizoc's sentences.  Lopez suffers from anxiety, insomnia, hypertension, depression,

13   prediabetes, and obesity, *see generally* ECF No. 484 (UNDER SEAL), and alleges that

14   he has at times been denied his medications, ECF No. 481 at 28.  His continual exposure

15   to COVID-19 presents an increased risk due to his comorbidities, and this fact, coupled

16   with witnessing inmates die from COVID-19, exacerbates his mental and physical health

17   conditions.  *Id.* at 28-29.  This is much like Tizoc, who suffers from obesity and diabetes

18   and was at increased risk from continued COVID-19 exposure.  Also relevant is Lopez's

19   strong familial support, *see* ECF No. 481-1 at 78-88 (family letters), his commendable

20   rehabilitation during his time in custody, *see id.* at 44-56, 62-73 (drug treatment program,

21   paycheck stubs, education records), and his strong release plan, *see id.* at 70, 78-88, as

22   these factors also weighed in favor of Tizoc's sentence reduction.  Further, at the time of

23   Lopez's motion, he had served 68 percent of his statutory term and 79 percent of his full

24   term, *id.* at 77, while Tizoc had served only 43.5 percent of his sentence, *Tizoc*, No. 15-

25   cr-1299-GPC-1, ECF No. 328.

26        Lopez's grounds for compassionate release are just as strong, if not stronger than,

27   Tizoc's grounds for compassionate release, which the Government joined in requesting.

28   The Court is not blind to the Government's attempt to reverse course and oppose Lopez's

15-CR-00575-GPC-1

1    substantially similar motion, especially given that both cases have been litigated before

2    the Court.  Because of the similarities between the two defendants and their grounds for

3    compassionate release, the Court finds that the disparity between Lopez's sentence and

4    Tizoc's reduced sentence contributes strongly to a finding of extraordinary and

5    compelling reasons.

6        Lopez also calls attention to the disparity between his sentence and those of other

7    similarly situated defendants.  *See* ECF No. 481 at 3 n.3, 11-13, 23-27.  Lopez argues that

8    some similar defendants were granted variances based on the Ninth Circuit's decision in

9    *Lopez* and the FSA.  *Id.* at 3 n.3, 23-27.  Lopez also argues that he was sentenced to a

10   term much longer than similar defendants in the Southern District of California based on

11   the U.S. Sentencing Commission's mean and median calculations in recent years.  *Id.* at

12   11-13.  Lopez asks the Court to also consider these disparities in determining whether

13   there are extraordinary and compelling reasons here.  However, apart from listing the

14   similar cases and providing data on mean and median sentences in the District, Lopez

15   does not provide support for his contention that these cases warrant relief here.  Certainly,

16   these cases are not as apposite as *Tizoc*.  And it is otherwise not clear how this general

17   comparison identifies a gross and unwarranted disparity.  Therefore, the Court finds that

18   the more general disparity Lopez identifies between his sentence and other similar

19   defendants' sentences does not constitute extraordinary and compelling reasons.

20           **ii.  The FSA, *Lopez*, and Sentencing Guideline Amendments**

21       Lopez further argues that several changes in the law, including the FSA, the Ninth

22   Circuit's decision on safety valve eligibility in *United States v. Lopez*, 998 F.3d 431 (9th

23   Cir. 2021), and November 2023 amendments to the U.S. Sentencing Guidelines, have led

24   his sentence to be unusually long and disparate.  *Id.* at 2-3, 21-28.   The Government

25   responds that, as a threshold matter, Lopez is not entitled to relief because (1) the Ninth

26   Circuit's interpretation of the FSA's safety valve provision in *Lopez* was abrogated by the

27   Supreme Court's decision in *Pulsifer v. United States*, 601 U.S. 124 (2024); and (2)

28   Lopez has not completed 10 years of his sentence, which is required to consider a change

1    in the law under USSG § 1B1.13(b)(6).  ECF No. 485 at 4.  The Government also argues

2    at length that the U.S. Sentencing Guidelines amendments do not entitle Lopez to a

3    sentence reduction under 18 U.S.C. § 3582(c)(2) because the imposed sentence is still

4    below the amended guideline range.  *Id.* at 4-6.

5         The Court first considers the Government's two threshold arguments.  First,

6    Lopez's reliance on the Ninth Circuit's interpretation of the safety valve provision in

7    *Lopez*, 998 F.3d 431, is misplaced.  The Supreme Court's decision in *Pulsifer* abrogates

8    the interpretation set forth in *Lopez*, which affirms this Court's prior interpretation of §

9    3553(f) under which Lopez was ineligible for safety valve.  *Pulsifer v. United States*, 601

10   U.S. 124 (2024).  Therefore, the Court will not consider *Lopez* or its potential effects in

11   deciding the instant motion.[6]

12        Second, the Court can now consider changes in the law as an extraordinary and

13   compelling reason.  Section 1B1.13(b)(6) states that "[i]f a defendant received an

14   unusually long sentence and has served at least 10 years of the term of imprisonment, a

15   change in the law….may be considered in determining whether the defendant presents an

16   extraordinary and compelling reason[.]" U.S.S.G. § 1B1.13(b)(6).  Thus, a defendant

17   must satisfy two requirements for the Court to consider whether a change in the law is an

18   extraordinary and compelling reason: (1) the defendant must have received an unusually

19   long sentence; and (2) the defendant must have served at least 10 years of their term of

20   imprisonment.  *See id.*  The Government argues that even if Lopez received an unusually

21   long sentence, the Court cannot consider changes in the law because Lopez has not yet

22   served 10 years of his term.  However, at the time of this Order, Lopez has been in

23   custody for 10 years and two months, ECF No. 303 at 1, so the Court may now consider

24   changes in the law.  The Court therefore rejects this argument.

25

26   ───────────────

27   [6] Lopez's FSA arguments seem to be tied to his reliance on the *Lopez*'s safety valve eligibility holding.
     *See, e.g.*, ECF No. 481 at 1-2, 20-27.  Because Lopez does not indicate how the FSA entitles him to

28   relief or creates a disparity in his sentence independent of *Lopez*'s holding, the Court rejects the FSA as
     a ground for relief here.

15-CR-00575-GPC-1

1    Lopez further contends that the November 2023 amendments to the U.S.

2  Sentencing Guidelines contribute to a sentence length disparity, which constitutes an

3  extraordinary and compelling reason warranting compassionate release.  ECF No. 481 at

4  20-23.  Under Amendment 821, which revised U.S.S.G. §§ 1B1.10 and 4A1.1(e), a

5  defendant who committed an additional offense while under a criminal sentence that has

6  seven or more criminal history points receives only one additional criminal history point.

7  *See* U.S.S.G. § 4A1.1(e).

8    At sentencing, the Court found an adjusted offense level of 37, a criminal history

9  category of III, and a guideline range of 262 to 327 months.  ECF No. 358 at 21.  In

10  reaching this range, the Court added two criminal history points because Lopez

11  committed the instant offense while under a criminal justice sentence.  *Id.* at 8-9.  With

12  five total criminal history points, Lopez was placed in Criminal History Category III.  *See*

13  *id.* at 21, *see also* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Now, applying the revised

14  U.S.S.G § 4A1.1(e), Lopez would not receive any additional status points for committing

15  the instant offense while under a criminal justice sentence.  Therefore, Lopez would have

16  a total of three criminal history points, thus placing him in criminal history category II.

17  *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Today, Lopez's adjusted guideline range

18  would instead be 235 to 293 months.  *Id.*

19    Lopez was ultimately sentenced to 168 months in custody.  ECF No. 337.  This

20  sentence is substantially lower than both the original guideline range and the current

21  adjusted guideline range.  Notwithstanding this, Defendant argues the disparities

22  Amendment 821 created in his sentence length constitute extraordinary and compelling

23  reasons.  ECF No. 481 at 5, 12-13.  But Defendant's premise—that Amendment 821

24  created a disparity—is faulty because Mr. Lopez was originally sentenced to a term that

25  is below the now-adjusted guideline range.

26    To illustrate this, the Court looks to 18 U.S.C. § 3582(c)(2), which expressly

27  provides for sentence reductions where a defendant's guideline range has been

28  subsequently lowered.  Policy statement U.S.S.G. § 1B1.10(b)(2)(A) clarifies that "the

15-CR-00575-GPC-1

1  court shall not reduce the defendant's term of imprisonment under 18 U.S.C. §

2  3582(C)(2) and this policy statement to a term that is less than the minimum of the

3  amended guideline range."  Therefore, Lopez is not eligible for a sentence reduction

4  pursuant to § 3582(c)(2) because his original sentence is lower than the amended

5  guideline range

6      Accordingly, the Court finds that the disparity created by the sentence reduction in

7  *Tizoc* contributes strongly to a finding of extraordinary and compelling reasons.

8  However, the more general disparities created by the FSA, *Lopez*, and Amendment 821 to

9  the U.S. Sentencing Guidelines, as illustrated by the sentences of similar defendants in

10  the District, do not contribute to a finding of extraordinary and compelling reasons.  The

11  Court will therefore consider Lopez's other arguments on their own, and then in

12  conjunction with the disparity created by *Tizoc*.

13      **B.  Medical Conditions**

14      Lopez argues that his worsening medical conditions throughout his time in custody

15  amounts to extraordinary and compelling reasons that warrant a sentence reduction.  *See*

16  ECF No. 481 at 19.  Section 1B1.13(b)(1) enumerates several medical circumstances that

17  constitute extraordinary and compelling reasons: (1) terminal illness; (2) a serious

18  physical condition, cognitive impairment, or aging that substantially diminishes the

19  defendant's ability to care for himself while in custody; (3) a medical condition requiring

20  long-term or specialized care that is not being provided; or (4) an ongoing outbreak of

21  infectious disease that puts the defendant at an increased risk of suffering severe medical

22  complications or death.

23      Lopez suffers from anxiety, insomnia, hypertension, depression, prediabetes, and

24  obesity.  *See generally* ECF No. 484 (UNDER SEAL).  He contends that he "has been

25  denied his anxiety, depression, and sleep medications" at times, which has resulted in

26  significant stress.  ECF No. 481 at 28.  He further contends that his anxiety and

27  depression stem from witnessing inmates contracting and dying from COVID-19 during

28  the global pandemic, which in turn worsens his other health conditions.  *Id*. at 29.  He

1    also contends that he is exposed to COVID-19 and that his medical conditions increase

2    his risk of falling seriously ill if he were to contract COVID-19.  ECF No. 486 at 9.

3         The Court first finds that Lopez's medical conditions, on their own, do not

4    constitute extraordinary and compelling reasons.  According to Lopez's medical records,

5    he has already contracted COVID-19, ECF No. 484 at 55 (UNDER SEAL), and he is

6    fully vaccinated for COVID-19, *id.* at 27 (UNDER SEAL).  Lopez's vaccination

7    significantly mitigates the risk that he will contract COVID-19, as well as the risk of

8    severe complications if he does contract COVID-19.  *See e.g., United States v. Ballenger*,

9    2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already

10   been infected and vaccinated, his chronic medical conditions alone do not amount to an

11   extraordinary and compelling reason to warrant compassionate release.").  Thus, Lopez's

12   medical circumstances do not create a unique risk of severe complications or death from

13   COVID-19.

14        Moreover, the combination of Lopez's conditions—anxiety, insomnia,

15   hypertension, depression, prediabetes, and anxiety—do not diminish his ability to care for

16   himself or require long-term or specialized care.  *Compare United States v. Caminos*, 472

17   F. Supp. 3d 802, 806 (D. Haw. 2020) (finding that defendant's serious and deteriorating

18   medical conditions, which included severe dental issues, dermatitis, stimulant related

19   disorder, mononeuropathy, presbyopia, hypertension, gastrointestinal issues, and severe

20   cluster headaches, which caused him intolerable pain, constituted extraordinary and

21   compelling reasons).  And Lopez's argument that he is at times "receiving inadequate

22   medical care . . . is not a proper ground for compassionate release." *United States v.*

23   *Lavan*, 2024 WL 872983, at *2 (E.D. Cal. Feb. 29, 2024) (noting that challenges to the

24   conditions of confinement are "properly brought in a habeas petition or a direct civil

25   claim, not via compassionate release") (quoting *United States v. Shults*, 2022 WL

26   2990716, at *5 n.4 (E.D. Cal. July 28, 2022)).

27        However, as described above, Lopez's conditions are identical to—if not more

28   serious than—the defendant's medical conditions in *Tizoc*.  There, the joint motion to

12

1  reduce the sentence relied heavily on Tizoc's diabetes and obesity, along with Tizoc's

2  increased vulnerability to COVID-19 because of his comorbidities.  *Tizoc*, No. 15-CR-

3  1299-GPC-1, ECF No. 324.  The Court granted the motion because "Defendant's

4  ongoing struggle with obesity and diabetes," when combined with the other presented

5  factors, constituted extraordinary and compelling reasons.  *Id.*, ECF No. 328.  While the

6  Government joined in Tizoc's motion, and therefore agreed that such medical conditions

7  could contribute to extraordinary and compelling reasons, it now summarily argues that

8  Lopez's medical conditions do not rise to extraordinary and compelling reasons.  Because

9  of the similarities between the cases, the Court will consider Lopez's more serious

10  medical conditions as contributing to a finding of extraordinary and compelling reasons.

11  ### C. Conditions of Confinement

12  Lopez argues that the COVID-19 pandemic led to unusually harsh conditions of

13  confinement which constitute extraordinarily and compelling reasons.  ECF No. 481 at

14  28-29, 33-37.  More specifically, he argues that the "trauma of hearing about and seeing

15  several inmates die in prison," exacerbated his existing physical and mental health issues,

16  *id.* at 28-29, and that the BOP's ongoing modified operational model resulted in limited

17  movement, limited visitation, and cruel "lockdowns," *id.* at 33-34.  The Government

18  counters that the general effects of COVID-19 on conditions of confinement do not rise

19  to the level of extraordinary and compelling reasons.  ECF No. 485 at 6-7.

20  Lopez primarily relies on *United States v. Martinez Encinias*, 682 F. Supp. 3d 993,

21  998-1007 (D.N.M. 2023), where the court granted compassionate release in large part

22  because the COVID-19 pandemic led to uniquely harsh confinement conditions.  There,

23  the court detailed the many reasons why the pandemic exacerbated the harshness of

24  confinement, including the deaths of many inmates, the fear of dying from COVID-19,

25  and the excruciating quarantines implemented at many prisons.  *Id.* at 998-1002.  The

26  court found that the harshness of custodial sentences for individuals who were sentenced

27  before the pandemic *may* constitute an extraordinary and compelling reason.  *Id.* 1003-

28  04.  To prevent its holding from becoming a "pandemic discount," the court narrowed

15-CR-00575-GPC-1

1   such relief to defendants sentenced before the pandemic and who "provide evidence that

2   their pandemic incarceration produced real, individualized, and cognizable harm." *Id.* at

3   1006.

4          The court decided *Martinez Encinias* before the U.S. Sentencing Guidelines policy

5   statement was revised, and therefore found that it had greater discretion to determine

6   what constitutes "extraordinary and compelling reasons" outside of the policy statement.

7   *Id.* at 997.  Here, the Court is bound by the policy statement, which does not list the harsh

8   conditions of pandemic-era confinement as an extraordinary and compelling reason on its

9   own.  And even if the Court were to follow *Martinez Encinias*, Mr. Lopez has not

10  provided evidence that his pandemic incarceration has produced a similar level of

11  individualized harm as the defendant in *Martinez Encinias*—who himself was

12  hospitalized and nearly died from COVID-19.  *Id.* at 1005.  Rather, Lopez witnessed

13  other inmates fall ill and feared that he might also fall seriously ill.  Lopez's experience is

14  unfortunately one shared by many other incarcerated individuals.  While the Court is

15  sympathetic to Lopez's experiences, it is not convinced that they rise to the level of

16  extraordinary and compelling circumstances on their own.  *See United States v. Adkins*,

17  No. 19-cr-00651-BAS-1, 2020 WL 3058097, at *1 (S.D. Cal. June 9, 2020).

18         However, as this Court has noted, "changed conditions adopted by the [BOP] in

19  response to the pandemic" may constitute extraordinary and compelling reasons when

20  "taken in combination with other individual circumstances[.]" *United States v. Wright*,

21  No. 19-cr-4286-GPC, 2022 WL 673265, at *3 (S.D. Cal. Mar. 7, 2022).  Lopez has been

22  in custody for the entirety of the COVID-19 pandemic, during which the BOP

23  implemented modified operational procedures that led to limited visitation, recreation,

24  and, worst of all, intense cell lockdowns for spans of more than 30 days.  Walter Pavlo,

25  *As Bureau of Prisons Enters "Phase 9" Of COVID-19 Plan, BOP Staff Wonder If There*

26  *Is A Real Plan*, FORBES (Aug. 7, 2020), https://bit.ly/38A2QG6.  Because the impact of

27  COVID-19 undoubtedly made Lopez's time in custody more difficult, the Court will

28  consider it in conjunction with the other circumstances in deciding whether there are

15-CR-00575-GPC-1

1    extraordinary and compelling reasons here.  *See Martinez Encinias*, 682 F. Supp. 3d at

2    1003 ("the conditions of confinement during the COVID-19 pandemic resulted in a

3    prison term that was substantially more severe than Mr. Martinez Encinias' sentencing

4    judge could have contemplated when sentencing him in 2017"); *United States v. Kibble*,

5    992 F.3d 326, 335 (4th Cir. 2021) (Gregory, C.J., concurring) ("A day in prison under the

6    current conditions is a qualitatively different type of punishment than one day in prison

7    used to be.  In these times, drastically different.").

8        **D. Rehabilitation**

9        Lopez also argues that his significant rehabilitation is an extraordinary and

10    compelling reason warranting a sentence reduction.  ECF No. 481 at 13.  Congress has

11    instructed that "rehabilitation of the defendant is not, by itself, an extraordinary and

12    compelling reason."  U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t).  "However, rehabilitation

13    of the defendant while serving the sentence may be considered in combination with other

14    circumstances in determining whether and to what extent a reduction in the defendant's

15    term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *see United States v. Millan*,

16    2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (finding "that rehabilitation, when

17    considered together with other equitable factors, could constitute 'extraordinary and

18    compelling reasons' for a sentence reduction")).

19        Lopez has completed a substantial amount of programming, including the BOP's

20    Residential Drug Abuse Treatment Program ("RDAP").  ECF No. 481-1 at 44-50.  He

21    also has strong familial support attesting to his promising release plan.  *See, e.g.*, ECF

22    No. 481-1 at 78-88.  Lopez has also received his GED and barber license, the latter of

23    which has helped him maintain a job during his time in custody.  ECF No. 481-1 at 51-

24    54; ECF No. 486 at 6.  He plans to continue working as a barber upon his release from

25    custody.  ECF No. 481-1 at 79-80.  Further, Lopez received a rare letter from a BOP

26    counselor while in pretrial custody, *id.* at 4, along with an appreciative letter from a BOP

27    Drug Abuse Coordinator after becoming a mentor, *id.* at 50, which show that he has been

28    dedicated to his rehabilitation since he was taken into custody.  The Court commends

1  Lopez's efforts and, while they do not constitute extraordinary and compelling reasons on

2  their own, the Court will consider them as contributing to a finding of extraordinary and

3  compelling reasons.

4       **E. Totality of the Circumstances**

5       The Court will now consider the totality of Lopez's circumstances and determine

6  whether they constitute extraordinary and compelling reasons.

7       Lopez's strongest basis for compassionate release is the disparity between his

8  sentence and the defendant's sentence in *Tizoc*, No. 15-CR-1299-GPC-1.  Lopez and

9  Tizoc are very similarly situated defendants, and this Court granted a joint motion for

10 compassionate release in *Tizoc* on similar, yet weaker, grounds than the grounds Lopez

11 presents here.  *See Tizoc*, No. 15-CR-1299-GPC-1, ECF No. 328.  The disparity between

12 the sentences following Tizoc's sentence reduction cuts strongly in favor of a finding of

13 extraordinary and compelling reasons.  Lopez also presents other compelling

14 circumstances, namely, a host of serious medical conditions, the harsh COVID-19-era

15 conditions of confinement, and genuine rehabilitation efforts throughout his time in

16 custody.

17      Lopez's circumstances are very similar to the circumstances in *United States v.*

18 *Gallardo*, No. 19-cr-2608-GPC, 2024 WL 4879493, at *3-6 (S.D. Cal. Jan. 8, 2024),

19 where this Court found that the defendant's sentencing disparity, medical conditions,

20 significant rehabilitation, and the effect of COVID-19 constituted extraordinary and

21 compelling reasons.  Here, Lopez's circumstances, when considered in total, rise to the

22 level of extraordinary and compelling reasons that warrant compassionate release under

23 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Kutzera*, 2024 WL 3723538, at *1-2 (D.

24 Mont. Aug. 7, 2024) (finding that defendant's medical conditions, which included

25 seizures, anxiety, and bouts of elevated blood pressure, combined with his rehabilitation

26 constituted extraordinary and compelling reasons).

27 **II.    Applicable § 3553(a) Sentencing Factors and Danger to the Community**

28

15-CR-00575-GPC-1

1    Before granting compassionate release, the Court must assess whether a sentence

2    reduction is consistent with the applicable 18 U.S.C. § 3553(a) sentencing factors and

3    whether Lopez is a danger to others or the community.  U.S.S.G. §1B1.13(a).  The

4    relevant sentencing factors include: (1) "the nature and circumstances of the offense and

5    the history and characteristics of the defendant"; (2) the need for the sentence imposed (i)

6    "to reflect the seriousness of the offense," (ii) to provide adequate deterrence, (iii) "to

7    protect the public from further crimes of the defendant," and (iv) to provide adequate

8    rehabilitation to the defendant; (3) "the need to avoid unwarranted sentence disparities

9    among defendants with similar records who have been found guilty of similar conduct";

10    and (5) the need to provide victims restitution for the offense.  18 U.S.C. § 3553(a).

11    While the Court does not discount the seriousness of Lopez's offense, he has

12    sufficiently rehabilitated himself during his time in custody.  He has maintained

13    employment and remained sober throughout his time in custody.  ECF No. 486 at 12.  He

14    is prepared to leave his past conduct behind and carry on a new life supporting his family.

15    Therefore, despite the nature of the offense, Lopez has shown that a sentence reduction to

16    time served would result in a sentence that is commensurate with his conduct and

17    provides adequate deterrence.  Lopez's rehabilitation is enough to overcome the

18    seriousness of his offense, which occurred over a decade ago.  Moreover, there is a need

19    to avoid an unwarranted sentence disparity between Lopez's sentence and the reduced

20    sentence in *Tizoc*, No. 15-CR-1299-GPC-1, ECF. Nos. 327-329.

21    The Government's primary argument is that Lopez remains a danger to the

22    community, and thus a sentence reduction is not consistent with § 3553(a) factors or

23    U.S.S.G. § 1B1.13(a)(2).  ECF No. 485 at 7-10.  The Government argues that Lopez's

24    prior "repeated involvement in drug trafficking presents a true risk that he will continue

25    his past conduct if released[.]" *Id.* at 7.  The Government argues that Lopez's past

26    struggles with drug addiction exacerbate give color to this risk.  *Id.* at 8.  Lopez's offense

27    was indeed serious: the Court found him to have supervised one individual in the context

28    of a greater drug trafficking scheme.  ECF No. 481-1 at 26.  But his rehabilitation

1  outweighs any risk presented by his criminal history.  Aside from the instant conviction,

2  Lopez's earlier convictions took place in 2007, when he was just 21 years old.  ECF No.

3  303 at 11.  Now, Lopez is 38, and he has worked tirelessly towards rehabilitation while in

4  custody, including by taking educational courses, receiving drug addiction treatment, and

5  displaying the ambition to learn a craft and find employment.  His 10 years of sobriety

6  overshadows any risk that his past drug addictions pose.  Therefore, the Court finds that

7  Lopez does not currently present a danger to the community.

8       Accordingly, the Court finds that a reduction of Lopez's sentence to time served—

9  10 years and two months, and roughly 73 percent of his sentence—is consistent with the

10  § 3553(a) sentencing factors.

**CONCLUSION**

12       For the reasons set forth above, the Court **GRANTS** Lopez's motion for

13  compassionate release under 18 U.S.C. § 3582(c).  The Court reduces Lopez's sentence

14  to time served, with five years of supervised release to follow, as imposed at his original

15  sentencing hearing.  *See* ECF No. 337 at 3-4.  Lopez is to comply with the conditions of

16  supervised release as outlined at his original sentencing hearing and as recommended by

17  his probation officer.  *Id.*

18       **IT IS SO ORDERED.**

19

20  Dated:  April 14, 2025

21                                                    Hon. Gonzalo P. Curiel
                                                      United States District Judge
22

23

24

25

26

27

28

18

15-CR-00575-GPC-1